UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

Heather Jackson                                  Plaintiff
4106 Klerner Lane
New Albany, Indiana 47150

v.                                                        Case No. 4:17-cv-134

Harland Clarke Corporation                  Defendant
237 America Place
Jeffersonville, Indiana 47130

Serve:
CT Corporation System
150 West Market Street, Suite 800
Indianapolis, Indiana 46204

## COMPLAINT

Now comes the Plaintiff, Heather Jackson, by counsel, and for her complaint, states:

### INTRODUCTION

Top night-shift supervisor Tony Akers at Harland Clarke Corporation in Jeffersonville, Indiana sexually harassed Heather Jackson, a night-shift operator. She was subjected to offensive touching and verbal abuse. He and his cronies also taunted and harassed her due to her disability. This caused her severe emotional and physical trauma. Harland Clarke retaliated against her and failed to accommodate her by failing to support her and provide her job security through an extended period of disability, ultimately firing her in November, 2016.

### PARTIES

1. Plaintiff Heather Jackson is a resident of New Albany, Indiana, and a former employee of the defendant.

1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

Heather Jackson                               Plaintiff
4106 Klerner Lane
New Albany, Indiana 47150

v.

Harland Clarke Corporation                    Defendant
237 America Place
Jeffersonville, Indiana 47130

Serve:
CT Corporation System
150 West Market Street, Suite 800
Indianapolis, Indiana 46204

## COMPLAINT

Now comes the Plaintiff, Heather Jackson, by counsel, and for her complaint, states:

### INTRODUCTION

Top night-shift supervisor Tony Akers at Harland Clarke Corporation in Jeffersonville, Indiana sexually harassed Heather Jackson, a night-shift operator. She was subjected to offensive touching and verbal abuse. He and his cronies also taunted and harassed her due to her disability. This caused her severe emotional and physical trauma. Harland Clarke retaliated against her and failed to accommodate her by failing to support her and provide her job security through an extended period of disability, ultimately firing her in November, 2016.

### PARTIES

1. Plaintiff Heather Jackson is a resident of New Albany, Indiana, and a former employee of the defendant.

1

2. Defendant Harland Clarke Corp. is an employer headquartered in San Antonio, Texas engaged in the business of logistics in Southern Indiana.

## JURISDICTION AND VENUE

3. This court has jurisdiction due to federal questions of law under Title VII of the Civil Rights Act of 1964 concerning sexual harassment and retaliation, and the Americans With Disabilities Act concerning disability harassment, retaliation, failure to accommodate and pendent state claims.

4. Venue is proper in this court, as Harland Clarke has a physical business facility in Jeffersonville, Clark County, Indiana.

## FACTS

5. Heather Jackson had and has a medical history of severe and pervasive mental health issues before she went to work for HarlandClarke in 2008. These include dyslexia, dissociative personality disorder, and self-harming. Before she began work and up to and through several years of employment, these issues were in remission, latent, dormant, and controlled.

6. Likewise, while Jackson was employed and worked at Harland Clarke up to and through several years of employment, these issues were in remission, latent, dormant, and controlled. She worked without incident or injury to herself.

7. Jackson's last position held was as an operator performing duties operating the folio machine in the Jeffersonville, Indiana Harland Clarke facility on the third (night) shift. She was a productive, dependable, and valuable employee. She has dyslexia, so she found it difficult to quickly grasp new information from written material, but it did not affect her performance on her machine.

8. Jackson worked for Harland Clarke without serious or threatening recurrence of her mental-health issues until the fall of 2015.

9. Tony Akers began his employment on second shift in production. He was then promoted to third shift supervisor in approximately the spring of 2015. He directly supervised Adam Stapp in maintenance, Jennifer Munson (now Mays) in production, and Alvin Stohl in Quality Control, who had offices in the same area.

10. Akers and these others held a pre-shift "huddle" to prepare work for the shift. Akers would frequently pick at Jackson about her dyslexia in the pre-shift huddle in front of all the approximately 12-15 employees on the shift. She was frequently so embarrassed that she'd cry when she met her husband Eric for their brief mid-shift "lunch" period.

11. Akers made fun of Jackson's dyslexia, calling her an "f____-ing retard", a "retarded monkey", and other verbally-abusive names. Jackson began pinching her skin and breaking out due to stress, leaving blemishes, so Tony rhetorically asked her if she was "on meth".

12. At some point in the fall of 2015, co-worker Dawn Staley complained to Human Resources about goofing off and cliques on third shift. She said the four in the office- Akers, Stohl, Stapp, and Munson- were goofing off instead of working, threw her badge, and walked out. HR investigated, including talking to Jackson. Nervous about anyone siding with Staley, Akers and Munson interrogated Jackson about it. Jackson concluded that she was isolated on the night shift, and that HR would not protect her.

13. Stapp sexually harassed her multiple times by grinding on her from the rear in front of her folio machine several times. There were no cameras that could view her or her machine. He used his hands as well several times, touching her buttocks and breasts, a battery under common law.

14. After one of these occasions, the four were together in the office area. Jackson was present, too. Stapp bragged about sexually harassing Jackson. He said to Akers that he had grabbed a handful of her a__, but it wasn't on camera. Akers said since it wasn't on camera it didn't happen.

15. Akers, Stapp, and Stohl repeatedly tormented Jackson with crude sexual jokes in her presence, to try to make her gag, and then further tormenting her by making fun of her gagging.

16. By these frequent and repeated acts and omissions, Akers as top supervisor made Harland Clarke vicariously liable for his personal harassing behavior and for his intentionally, recklessly, and/or negligently failing to take prompt and effective remedial action to prevent harassment by these employees under his supervision.

17. On or about November 22, 2015, Jackson self-harmed by cutting herself at work. She left work, and Human Resources told her not to return to work without a psychiatric release.

18. Jackson was already seeing a nurse-practitioner in psychiatry (NPP). She went to the NPP, who met with her and released her to return to work.

19. Following Staley's communication with HR, Akers was fired. Stahl admitted to verbal harassment and resigned. Stapp quit. Munson saved her job.

20. Jackson went back to work, and saw the harassers' empty offices. She felt undeservedly guilty. Munson said to her that it was her fault they had lost their jobs.

21. On or about November 25, 2015, Jackson cut herself at work again.

22. Having failed to properly investigate harassment and discrimination on the 3rd shift, causing Jackson to hurt herself, Human Resources began a second investigation. Jackson and her husband were ordered to come into work, and met with HR twice. Even though she was fearful of inaction and reprisal, she explained what she had endured.

23. She left work, and on or about December 2, 2015 again went back to her NPP, who again released her, but Harland Clarke wouldn't let her return. Keeping her away from work exacerbated her mental-health conditions.

24. On December 18, HR ordered her to an evaluation at Wellstone, where she was cleared for work. HR would not accept clearance and would not allow her to return to work.

25. On January 28, 2016, Harland Clarke ordered Jackson to an independent medical evaluation. The evaluator was ineffective and dismissive. On February 2, that report recommended to Harland Clarke that she remain off for 90 days till re-evaluation. The delay cost her valuable recovery time and exacerbated her condition.

25. On May 5, Jackson was preparing to go for re-evaluation with the independent medical evaluator, when she suffered her first violent seizure. She had another on May 11, then another on May 20. On May 27, she collapsed and was hospitalized. The evaluator then canceled still another appointment due to a scheduling conflict, but by then Jackson was too sick to keep the next appointment.

26. Harland Clarke moved her from short-term disability to long-term disability status and shunned her, providing surface-level and false assurances about her job security and preparing to discharge her.

27. On June 3, Harland Clarke made her sign a document requiring her to see the independent medical evaluator on June 9 or be discharged. But she then had a seizure in the HR office in their presence on June 3, so Harland Clarke told her the evaluation "wasn't necessary", clearly writing her off.

28. On June 7, Jackson was evaluated by a neurologist, who put her on epileptic-seizure medication and ordered three-day in-patient testing.

29. On August 15, Jackson was admitted to the hospital for stress-related seizures. She was approved for therapy.

30. On September 6, she had her first therapy session.

31. On September 8, She had a follow up evaluation with the neurologist, who released her, saying the seizures are not epileptic, only stress-related and psychologically induced, and recommended further therapy. The neurologist opined that she would make a full recovery in several months. On each occasion, the Jacksons would visit the HR office to keep Harland Clarke apprised of her status.

32. On November 29, 2016, without notice or warning, Harland Clarke fired her by certified letter, saying it would not accommodate her.

33. Jackson filed a complaint with the Equal Employment Opportunity Commission concerning all her allegations, and was issued a right-to-sue letter dated May 11, 2017.

## CAUSES OF ACTION

34. By these acts and omissions, Harland Clarke created a sexually hostile work environment in violation of Title VII of the Civil Rights Act of 1964, directly and proximately causing Jackson harm by triggering severe emotional and physical injury.

35. By these acts and omissions, Harland Clarke created a hostile work environment due to Jackson's disability, and discriminated against her by refusing to accommodate her disability, in violation of the Americans With Disabilities Act, directly and proximately causing Jackson's disabilities by triggering and exacerbating her severe emotional and physical conditions.

36. By these acts and omissions, Harland Clarke recklessly and negligently retained Akers as top supervisor on Jackson's shift, who intentionally inflicted severe emotional distress. Harland Clarke inadequately supervised, evaluated, and investigated Tony and these cronies, likewise causing severe emotional and physical injury.

## DEMAND

37. For these reasons, Plaintiff Heather Jackson respectfully demands:

38. Equitable relief and damages;

39. Her attorneys' fees and costs; and

40. Any and all other relief to which she may be entitled.

Attorney signatures

_____
Kenneth C. Pierce, II #23701-10
Blanton & Pierce, LLC
705 Meigs Avenue
Jeffersonville, IN 47130
Telephone: (812) 283-8577
Facsimile: (812) 283-7995


/s/ J. Chris Sanders
J. Chris Sanders
Attorney for the Plaintiff
Chris Sanders Law PLLC
517 West Ormsby Avenue
Louisville, KY 40203
(502) 814-0094
*Counsel Consent Received*


/s/ Jill M. Guarascio
Jill M. Guarascio
Attorney for the Plaintiff
125 Chenoweth Lane, Suite 201
Louisville, KY 40207
(502) 895-1517
*Counsel Consent Received*

8

## VERIFICATION

I, Heather Jackson, have read this complaint, and it is true to the best of my knowledge and belief.

*[signature]*

Heather Jackson


COMMONWEALTH OF KENTUCKY
)
)
)
COUNTY OF Jefferson
By: Heather Jackson

SWORN TO AND SUBSCRIBED before me this 13th day of July, 2017.
My commission expires: May 20, 2020

*[signature]*
Notary Public

8